UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.   4:19CR327 RWS |
| TERRELL REID, | ) ) ) ) |
| Defendant. | ) |

**THE GOVERNMENT'S RESPONSE TO TERRELL REID'S MOTION FOR RETURN OF PROPERTY PURSUANT TO RULE 41(g)**

The United States of America moves for summary judgment against Terrell Reid's pro se Motion for Return of Property (the "Motion"). (Doc. #249).

**SUMMARY AND PROCEDURAL HISTORY**

In April 2019, agents with Immigration and Customs Enforcement, Homeland Security Investigations, in El Paso, Texas and St. Louis, Missouri, participated in a certified undercover operation against Terrell Reid, Brian Lawrence, and Bobby Robinson regarding the purchase of kilogram quantities of cocaine. During the course of the operation, Reid met with undercover agents in St. Louis and gave them approximately $87,000 in cash in a Luis Vuitton bag in exchange for cocaine on behalf of Lawrence and Robinson. Thereafter, all were arrested and four cellular phones were seized from Reid.

Reid, Lawrence, and Robinson were eventually indicted in a superseding indictment stemming from the undercover transaction. (Doc. #32). Lawrence and Robinson pleaded guilty. (Doc. #102, #231). Reid filed a series of pre-trial motions which resulted in an evidentiary hearing regarding the transaction. (Doc. #171). Subsequently, the government dismissed the indictment

1

against Reid. (Doc. #216).

In August 2021, Reid filed the instant Motion seeking the return of the $87,000, Louis Vuitton bag, and the four cellular telephones pursuant to Federal Rule of Criminal Procedure 41(g). (Doc. #249). Reid argues that he is entitled to a return of the property since none of it was criminally forfeited from him and the time for an administrative or civil forfeiture proceeding has lapsed.

As there is no criminal case pending against Reid, his Motion should be construed as a civil claim against the United States. The appropriate response, therefore, is not a motion to dismiss but for summary judgment pursuant to Rule of Civil Procedure 56 since the government's response includes evidence outside of Reid's initial pleadings. *Santana-Lim v. United States*, 2011 WL121802 (S.D. Tex. Jan. 12, 2011). Accordingly, the Court should grant summary judgment in favor of the government, because: 1) the money was not "seized" for purposes of forfeiture; instead, it was proceeds of a certified undercover transaction which, by statute, may be kept by Customs agents to be used for expenditures related to the operation; 2) the cellular phones and Luis Vuitton bag are "derivative contraband" – the tools of drug trafficking – and should not be returned to Reid; 3) regardless, the doctrine of *in pari delecto* prevents Reid as a matter of law from using this Court to obtain the return of drug proceeds and facilitating property given to an undercover agent.

**FACTS**

1.    In April 2019, Immigration and Customs Enforcement, Homeland Security Investigations, in El Paso, Texas made contact with an individual later identified as Terrell REID

regarding REID's desire to purchase 10 kilograms of cocaine. (Evidentiary Hearing Transcript ("Tr.") (Doc. #181) (Exhibit 1), p. 16-17; Doc. #102, #231, § 4).

2. The operation was a certified undercover operation commenced pursuant to 19 U.S.C. 2081. (Garcia Declaration (Exhibit 2), ¶ 3).

3. The undercover HSI agents negotiated a price of $29,000.00 for 10 kilograms of cocaine with REID. (Garcia Declaration, ¶ 4; Tr., p. 19; Doc. #102, #231, § 4).

4. Undercover HSI agents arranged to meet with Reid at a hotel in the Eastern District of Missouri on April 16, 2019. (Garcia Declaration, ¶ 4; Tr., p. 27; Doc. #102, #231, § 4).

5. On that date, Reid, Brian Lawrence, Bobby Robinson, and others arrived at the hotel. (Tr., p. 29; Doc. #102, #231, § 4).

6. Reid met an undercover agent outside, then proceeded to the hotel room and met with the rest of the undercover team to conduct the cocaine transaction. (Garcia Declaration, ¶ 5-6; Tr., p. 30).

7. Reid told the agents he had the money for eight kilograms of cocaine and was waiting on the money for the remaining two that were ordered. Reid was shown, and approved, the cocaine. (Garcia Declaration, ¶ 7-8; Tr., p. 31).

8. Reid left the room to retrieve the money for the cocaine. (Garcia Declaration, ¶ 9; Tr., p. 31). Reid soon returned carrying a Luis Vuitton bag that Reid stated contained the money for three kilograms of cocaine. (Tr., p. 32). Reid took $4,500 for himself as a fee, and provided the remainder of the cash in the Luis Vuitton bag, approximately $87,000, to the undercover agents as payment for supplying, transporting, and delivering three kilograms of cocaine. (Garcia Declaration, ¶ 10-11; Tr., p. 34; Doc. #102, #231, § 4).

9. At Reid's request, the three kilograms of cocaine were supposed to be delivered to Robinson, Lawrence, and the rest waiting in the parking lot. (Garcia Declaration, ¶ 12, 14; Doc. #102, #231, § 4). Instead, agents arrested Reid. (Garcia Declaration, ¶ 15; Doc. #102, #231, § 4).

10. Following his arrest, Reid was read his *Miranda* rights and agreed to speak with agents. Reid answered questions and made statements. (Tr., p. 37-40).

11. Agents also had seized items from Reid including: four cellular phones, Pyrex glass dish, and a digital scale. (Tr., p. 35). Reid gave agents consent to search all four cell phones. (Tr., p. 49-50). One of the phones had the contact information for Lawrence, Robinson, and another involved in the deal. (Tr., p. 50).

12. Cellular phones are often utilized by drug traffickers. (Kraft Declaration (Exhibit 3), ¶ 5). Their phones often contain evidence, fruits, and instrumentalities or things otherwise criminally possessed or derived, that are evidence of, or which have been intended for use as, the means of committing controlled substance violations. (Kraft Declaration (Exhibit 3), ¶ 6).

13. The interactions between Reid and the undercover agents (except the post-arrest interview), including the transaction that transpired inside the hotel room were audio and video recorded. (Tr., p. 54-55).

## LEGAL STANDARD

Federal Rule of Criminal Procedure 41(g) provides that: "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return ... in the district where the property was seized." Where, as here, there is no criminal proceedings pending against the movant, a 41(g) motion is treated as a civil equitable action governed by the Federal Rules of Civil Procedure. *United States v. Ibrahim,* 522 F.3d 1003,

1007 (9th Cir. 2008); *see also United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005) ("When an owner invokes Rule 41(g) after the close of all criminal proceedings, the court treats the motion for return of property as a civil action in equity."); *Bailey v. United States*, 508 F.3d 736, 738 (5th Cir. 2007) (noting that where "criminal case had concluded, the court properly construed [the Rule 41(g) motion] as a civil complaint under the court's general equity jurisdiction").

The court converts the opposition to the motion for return of property into a motion for summary judgment if it cannot be decided on the pleadings, and the court determines whether the government has met the standard for summary judgment; i.e., there is no "genuine issue of material fact" and that it is "entitled to judgment as a matter of law." *Ibrahim,* 522 F.3d at 1008; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.").

Rule 41(g) requires the district court "afford the movant an opportunity to meet this burden, which may include, but does not require, an evidentiary hearing." *Jackson v. United States*, 526 F.3d 394, 396 (8th Cir. 2008); *United States v. Cantu*, 667 Fed. Appx. 611, 612 (9th Cir. 2016). No evidentiary hearing is required "[w]hen it is apparent that the person seeking a return of the property is not lawfully entitled to own or possess the property." *United States v. Felici*, 208 F.3d 667, 670 (8th Cir. 2000) (abrogated in other part by *Henderson v. United States*, 575 U.S. 622 (2015)).

## ARGUMENT

### I. The Government can Lawfully Retain and Use Funds Received Through A Certified Undercover Operation Pursuant to 19 U.S.C. § 2081

Reid argues in his Motion that the subject property should be returned to him because the

5

government did not acquire ownership in the property through an administrative or judicial proceeding. Specific to the $87,000, Reid's argument fails because the subject funds were not, in fact, "seized" for the purposes of asset forfeiture. Instead, the money was given by Reid to government Customs' agents as part of a certified undercover operation. This is not a distinction without a difference. Funding of and the handling of proceeds received in undercover investigative operations run by the U.S. Customs Service is covered by 19 U.S.C. § 2081. This statute authorizes the U.S. Customs Service, in an undercover operation that has been certified pursuant to statute, to use the proceeds of an undercover operation to offset necessary and reasonable expenses incurred in the course of the operation. 19 U.S.C. § 2081(a)(3). The statute further provides for the disposition of those proceeds into the general treasury when they are no longer necessary for the conduct of the operation. 19 U.S.C. § 2081(b)(5). The statute does not require that the proceeds at issue first be forfeited.

Here, Reid cannot dispute that he gave legacy Customs' agents $87,000 as part of a certified undercover drug operation. While the Customs' Service may have been able to institute administrative forfeiture proceedings against the money had they so chose, 19 U.S.C. § 2081 made it unnecessary. The fact that the money is *also* subject to forfeiture under 21 U.S.C. § 881 does not require the exclusive use of that statute to obtain or retain money received in connection with an illegal drug transaction in an ongoing undercover investigative operation. *See United States v. Clymore*, 245 F.3d 1195, 1200 (10th Cir. 2001) (noting that administrative forfeiture is not the only means for the government to obtain title to proceeds of criminal activity or derivative contraband.). Thus, 19 U.S.C. § 2081 provides the statutory authority for the Customs Service to retain the $87,000 given by Reid.

7

## II. Reid's Cellular Phones and the Louis Vuitton Bag Are Derivative Contraband And Should Be Retained By The Government

A Rule 41(g) motion should be denied if the property sought is contraband. *United States v. Howard,* 973 F.3d 892, 895 (8th Cir. 2020). The Eighth Circuit has explained that there are two types of contraband: contraband per se and derivative contraband. *Felici*, 208 F.3d at 670-71. Derivative contraband is property that "may be lawfully possessed but which became forfeitable because of unlawful use." *Id.* at 670 (citation omitted). The equitable doctrine of unclean hands "allows a court to withhold equitable relief if such relief would encourage or reward illegal activity." *Felici*, 208 F.3d at 670-71.

*Felici* further applied these doctrines to cases where the government failed to file forfeiture actions. *Felici* at 670-71 ("We believe, however, that such a failure [to file a forfeiture action] should not prevent the government from being able to assert, in resistance to a Rule 41[(g)] motion, a limited derivative contraband theory, i.e., that the items sought to be returned were in fact utilized or intended to be utilized by the person who possessed them for the manufacture, storage, or transportation of controlled substances."). So, if the cellular phones and Louis Vuitton bag " 'were in fact utilized or intended to be utilized ... for the manufacture, storage, or transportation of controlled substances,' then the government has shown a legitimate reason to retain the property." *Howard*, 973 F.3d at 895 (citing *Felici,* 208 F.3d at 671).

Here, the evidentiary record shows Reid used a phone to communicate with El Paso agents to set up the drug deal and for communications on the day of the transaction. A later download indicated one phone had the contacts for Lawrence, Robinson, and another involved in the deal. The Eighth Circuit and this District have recognized that cellular phones are essential tools of the drug trade. *United States v. Eggerson*, 999 F.3d 1121, 1125 (8th Cir. 2021); *United States v.*

8

*Fuentes Torres*, 529 F.3d 825, 827 (8th Cir. 2008) (citation omitted); *United States v. Faller*, 681 F. Supp. 2d 1028, 1046 (E.D. Mo. 2010) ("…cell phones are known tools or instruments of the drug trade…"). This view is corroborated by the experience of law enforcement, who know that cellular phones are key tools used by drug dealers to facilitate drug transactions. Altogether, it is therefore apparent that the phones seized here in the context of an undercover sting operation – when phones were used to set up and consummate the transaction – are derivative contraband. It makes no sense to return to Reid the tainted tools of his trade.

Likewise, Reid cannot legitimately dispute that he used the Louis Vuitton bag to facilitate the cocaine transaction. Like telephones, otherwise normal items used to facilitate drug transactions are also recognized by the courts as derivative contraband whose return to a claimant is inappropriate. *See Howard*, 973 F.3d at 895; *Awan v. United States,* 2014 WL 1343129 (E.D.N.Y. Mar. 31, 2014) (denying Rule 41(g) motion where defendant failed to establish that the property used to provide support to terrorists was not derivative contraband);

Accordingly, the four cellular phones and the Luis Vuitton bag are derivative contraband that should not be returned to Reid's unclean hands.

### III. The Doctrine of *In Pari Delecto* Bars Reid's Recovery of Funds

Even if the government was required to forfeit the money and the Louis Vuitton bag, that the government failed to do so does not automatically entitle Reid to their return.[1] *See United States v. One Toshiba Color Television*, 213 F.3d 147, 156-57 (3rd Cir. 2000) (a holding that a forfeiture was void due to inadequate notice does not equate to a ruling that the claimant is entitled to a return of the property.). Indeed, Reid must still establish lawful entitlement to the property for

---

1  The cellular phones were seized pursuant to Reid's arrest and not given to the undercover agents.

9

it to be returned. *See Clymore,* 245 F.3d at 1201. Reid cannot do so here, as the *in pari delicto* doctrine prevents him from using the courts to recover the property that he voluntarily transferred to government agents. *United States v. Smith*, 659 F.2d 97 (8th Cir. 1981); *Mantilla v. United States*, 302 F.3d 182 (3d Cir. 2002).

      The doctrine of *in pari delicto* stands for the well established principle that a court will not aid a plaintiff in recovering property delivered under an illegal contract. *Harriman v. Northern Securities Co.,* 197 U.S. 244 (1905). In *United States v. Farrell,* the D.C. Court of Appeals applied the doctrine to undercover drug operations, finding that money paid to an undercover agent in an illegal drug transaction could not subsequently be recovered by the individual who willingly handed over the money in an attempt to break the law. 606 F.2d 1341, 1350 (D.C.Cir. 1979). The Eighth Circuit subsequently applied the *Farrell* rule to prevent the return of $25,000 which a claimant transferred to undercover agents in an attempt to purchase hashish. *United States v. Smith*, 659 F.2d 97, 100 (8th Cir. 1981). In *Smith*, like here, the agents kept the money but did not institute forfeiture proceedings. *Smith*, 659 F.2d at 99. The Eighth Circuit held that the money had not been seized, but had been voluntarily transferred to the DEA agent. *Smith*, 659 F.2d at 99. Quoting extensively from the *Farrell* opinion, the court held that public policy required the court to "deny Smith the aid of the courts in his efforts to regain the $25,000 he used to induce an illegal contract to purchase hashish." *Smith*, 659 F.2d at 100.

      Although the *Smith* court noted in a footnote that it did not expect the situation confronting it to be a recurring problem because the law was amended in 1978 to provide for the forfeiture of money furnished in exchange for a controlled substance, it is quite clear that the court thoroughly embraced the doctrine that public policy stood against using the courts to enforce an illegal

10

contract. *Smith*, 659 F.2d at 99-100. That doctrine was the clear basis of its decision, not the unavailability of forfeiture, and since then, courts have consistently held that the voluntary transfer of property to an undercover agent in the course of a crime does not constitute a seizure by the United States and have refused a claimant access to the courts to recover the property regardless of the absence, or deficiency, of a forfeiture action. *See e.g. Mantilla v. United States*, 302 F.3d 182 (3d Cir. 2002); *Santana-Lim v. United States*, 2011 WL 121802 (S.D. Tex. Jan 12, 2011); *Acheampong v. United States*, 2000 WL 1262908 (S.D.N.Y. Sept. 5, 2000);

Nor is a conviction necessary to establish that a transaction is illegal. *United States v. Thomas*, 75 F.2d 369, 370–71 (5th Cir. 1935). In *Kardoh v. United States,* the Ninth Circuit held that the government's choice to not prosecute Kardoh for attempting to purchase forged alien registration cards "did not make his payment to the undercover agent any more innocent ... nor did it deprive him of due process" for the government to keep the $40,000 that Kardoh had given to the undercover agent. 572 F.3d 697, 702 (9th Cir. 2009).

Here, there can be no dispute that Reid voluntarily gave the $87,000 inside the Luis Vuitton bag to undercover agents in furtherance of an illegal drug conspiracy. It matters not whether Reid was convicted of that conspiracy. The rule against allowing a criminal to invoke the power of the court to compel return of drug money and facilitating property freely given in the course of a crime precludes Reid's claim.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Government respectfully moves this Court to grant summary judgment in favor of the Government, or otherwise deny Reid's Motion for return of the subject property.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

/s/ Stephen Casey
STEPHEN CASEY, #58879(MO)
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2021 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record, and, on or about September 8, 2021, also mailed, postage prepaid, to the following:

Terrell Reid
22803 State Highway 249
Mailbox 164
Tomball, TX 77375-8336

/s/ Stephen Casey
Assistant United States Attorney